HENDERSON MERCANTILE COMPANY v. FIRST NATIONAL BANK OF MCKINNEY.

No. 1605. Decided February 13, 1907.

**1.—Non Est Factum—Corporation—Note—Authority to Execute.**

A plea of non est factum to the alleged note of a corporation sued on, put in issue the authority of the agent, its vice–president and treasurer, executing same; the note was inadmissible without such proof, and, though admitted, constituted no evidence of such authority. (P. 347.)

**2.—Same—Authority of Officers—Treasurer—Vice-president.**

  Neither the vice-president nor the treasurer of a mercantile corporation has, by virtue of his office, and without other authority, power to bind it by the execution of a promissory note in the corporate name.   (Pp. 347, 348.)

**3.—Same—Execution of Other Notes.**

  On the issue of an agent's authority to execute a note for a corporation, other notes signed by him in the corporate name were not admissible without evidence of the company's knowledge and acquiescence in his exercise of such powers.   (P. 349.)

**4.—Corporation—Note—Authority to Execute.**

  Evidence considered and held insufficient in law to justify a finding that a corporation was bound by a promissory note executed in its name by its vice-president and treasurer, either by authority given to execute it, or by estoppel or ratification.   (Pp. 345-347, 349.)

Error to the Court of Civil Appeals for the First District, in an appeal from Collin County.

The bank sued Dreeben and the Henderson Mercantile Company and recovered judgment, which was affirmed on defendant's appeal.   The mercantile company then obtained writ of error.

*Israel Dreeben, Church & Doyle, Abernathy & Abernathy* and *Etheridge & Baker,* for plaintiff in error.—The judgment of the trial court and the Court of Civil Appeals is, as to plaintiff in error, wholly without evidence in its support.   Rev. Stats., arts. 656, 657; Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 649; Myer Bros. Drug Co. v. Tucker, 34 S. W. Rep., 786; Joske v. Irvine, 91 Texas, 574; Northside Ry. Co. v. Worthington, 88 Texas, 562; Farrer v. Talley, 68 Texas, 349.

*R. C. Merritt* and *Garnett & Smith,* for defendant in error.

BROWN, ASSOCIATE JUSTICE.—From the statement made by the Honorable Court of Civil Appeals we make the following condensed statement of all the facts bearing upon the liability of the Henderson Mercantile Company upon the note sued on in this case.

In the year 1899 the First National Bank of McKinney was engaged in business in that city and Louis I. Dreeben was a merchant in the same city.   The Henderson Mercantile Company was a corporation created under the laws of the State of Texas, doing business at Henderson, Texas, and authorized by its charter to do a general mercantile business, buying and selling merchandise by wholesale or retail, and was authorized to establish branch houses to transact its business in any part of the State.   Louis I. Dreeben, a stockholder, vice-president and treasurer of the said mercantile company, delivered to the said bank the following note:

$1,000                                     McKinney, Texas, January 24, 1899.

  "24th day of April after date for value received we promise to pay to the First National Bank or order, one thousand, 00-100 dollars at

their office in McKinney, Texas, to bear interest at the rate of ten per-cent per annum from date. And further hereby agree that if this note is not paid when due to pay all costs necessary for collection, including ten percent for attorney's fees.

"No.                                                    Due.
              "(Signed) Louis I. Dreeben.
              "(Signed) E. Dreeben.
              "(Signed) Henderson Mercantile Co.
                            "L. I. D. V. P. & T."

The letters "L. I. D. V. P. & T." which follow the name of the mercantile company indicate that the name was signed by Louis I. Dreeben, as vice-president and treasurer of the company. The note was indorsed on the back with the names: E. Dreeben, Louis I. Dreeben. Upon this note was delivered to Louis I. Dreeben $1,000, which was deposited in the bank to his credit and was drawn out by him on his own checks. Nothing was paid upon this note except $157.10, which was derived from the bankrupt estate of Louis I. Dreeben. This suit was brought upon the note in the District Court of Colin County against E. Dreeben and the Henderson Mercantile Company, the latter entering a plea of non est factum to the note; and also pleaded that it was a private corporation and did not have the power to make the note as charged in the petition. Louis I. Dreeben was a bankrupt and residence not known therefore not joined in the suit.

There is no positive evidence that the Henderson Mercantile Company authorized Louis I. Dreeben to sign its name to the note, and the liability of that company depends upon the following circumstances and facts as found by the Court of Civil Appeals.

Louis I. Dreeben was a stockholder and director, vice-president and treasurer of the mercantile company before and after he went to McKinney. He had no means of his own, except personal property worth $300, and was employed by the mercantile company to work for it at a salary of $50 per month. When he arrived at McKinney he had a stock of goods valued at from $5,000 to $6,000, of which he had sole possession. There is no evidence to show how he obtained his goods, but the court found that he must have had financial aid from some person. When Louis I. Dreeben delivered the note to the bank he told the cashier that his business in McKinney and the business of the Henderson Mercantile Company were "all one." The bylaws of the mercantile company contained a provision that "no contract not sealed or stamped with the seal of the corporation, bearing thereon the words 'the Henderson Mercantile Company' and signed by the president or general manager in his stead and the secretary, shall in any way be binding upon or bind this corporation." The corporation had a seal but it was not attached to the instrument in suit, nor was it signed by the secretary or president of the corporation. During the time that Louis I. Dreeben was in business at McKinney he drew some checks or drafts on the mercantile company, which were paid, and the court finds that if others had been drawn they would have been paid. The largest sum drawn for in one draft was $200. At different times during the continuance of the business at McKinney goods were shipped

from Louis I. Dreeben's store to the Henderson Mercantile Company at Henderson amounting to about $300.

Louis I. Dreeben went into bankruptcy and Harry Berwald, son of L. Berwald, president, and Israel Dreeben, secretary, of the mercantile company, went to McKinney November 8, 1899, and requested the bank to present its claim against the estate of Louis I. Dreeben, which was done. The request was in writing and Harry Berwald signed to it the name of L. Berwald as president and E. Dreeben. The writing recognized the validity of the note sued upon as against the mercantile company and E. Dreeben but L. Berwald was not in the city at the time and there is no proof that he authorized Harry Berwald to sign the paper or that L. Berwald had seen it or agreed to its terms. L. Berwald could not write and Harry, his son, usually signed his name to papers.

No positive denial of the validity of the note or the written acknowledgment was made until after this suit was brought; but on July 27, 1901, before the institution of the suit the mercantile company wrote to the bank regarding the note. The letter expressed surprise at and ignorance of the existence of the note; and that the secretary would call upon the bank in a short time.

On August 1, 1901, the Henderson Mercantile Company wrote to the attorneys of the bank asking them to delay suit, saying that the secretary would call on the attorneys with reference to the claim and if it was good it would be paid; that the company was corresponding with Louis I. Dreeben with the view of getting the matter settled amicably.

The bank gave notice to the mercantile company to produce its books in court; in response to which it produced a part of the books among them a copy of its minute book, but stating that the original minute book had been destroyed after they received the notice to produce it in court, because ink had been spilled upon it; but there is nothing to show whether the ink was spilled intentionally or accidentally upon it. There is evidence to show that in 1899 four notes were in existence, the first two are dated January 6, 1899, each for $430, the second two dated 1st day of February, 1899, for $100 each, and each of the said four notes was payable to persons who lived in or near to the town of Henderson; was signed by Louis I. Dreeben as the maker and indorsed by E. Dreeben and the Henderson Mercantile Company. E. Dreeben, the secretary, and Israel Dreeben, the president of the company and its general manager, testified that they knew nothing of such notes until they were mentioned here in court.

The case was tried by the court without a jury and judgment was rendered in favor of the bank against E. Dreeben and the Henderson Mercantile Company for $1,600.

The plea of non est factum filed by the Henderson Mercantile Company called for proof by the plaintiff of the authority of Louis I. Dreeben to sign the name of the mercantile company to the note in suit, and without such proof the note was not admissible in evidence, and, being admitted, constituted no proof of the fact put in issue by the plea. (Blaine & Kelley v. Pacific Express Co., 69 Texas, 74.)

There was no proof offered of authority given by the corporation to

Louis I. Dreeben to borrow money for it, or to execute any written contract on its behalf. He purported to act as vice-president and treasurer and the validity of his act depends upon the powers which by law attached to those offices as such.

As treasurer, Dreeben was employed only to perform the ordinary duties of such officer, which are to receive, safely keep and disburse the moneys belonging to the corporation under the supervision of the board of directors. There is nothing in the evidence to show that the bylaws, the charter or the directors, by any act of theirs, ever empowered Dreeben, as treasurer, to borrow money for it or to execute notes or any written obligation therefor, therefore, the fact that he was treasurer of the company and purported to act as such constitutes no proof of authority for making this note. (4 Thompson on Corp., secs. 4716, 4717.)

By virtue of his office as vice-president of the corporation Louis I. Dreeben had no authority whatever to borrow money for the corporation nor to execute any written contract for it. (Missouri, K. & T. Ry. Co. v. Faulkner, 88 Texas, 649; 7 Thompson on Corp., sec. 8550.) In Railway v. Faulkner the question was as to the power of a vice-president of the railway company to appoint a general passenger agent for a period of time greater than one year. This court, by Judge Denman, said: "No statute of Kansas, nor provision of the charter of such corporation, granting such power has been produced. So far as this record shows, the bylaw above quoted is the sole source of the authority of the first vice-president of this company. It is clear, that all persons appointed by him thereunder were removable by him or his successor at pleasure, and that therefore it conferred upon him no power to appoint or employ Faulkner for a fixed period of one year, without power of removal. . . . Any other construction would render the bylaws nugatory. . . . It is contended that Faulkner had no notice of the limitation upon Waldo's power, and is therefore not bound by it. This contention can not be maintained; because (1) Waldo's power under said bylaws did not extend to the employment of any one, except subject to the power of the first vice-president to discharge at pleasure; and (2) if that be not true, still he, in dealing with this officer of the corporation, was chargeable with notice of the limitation upon such officer's power contained in the very bylaws conferring the power to contract with him." In the section last above cited, Mr. Thompson says: "So little does the law take notice of the powers of this officer (vice-president) that it may be said that, by virtue of his office, he is a mere locum tenens of the president, with power of presiding at meetings of the board of directors in the absence of the president, and of doing little else without special authority. . . . But, like any other officer or agent of the corporation, he may act as its agent under special authority, express or implied, from the fact of being held out as agent, although not acting as president or vice-president; and, when so acting, his acts bind the corporation like those of any other agent."

Looking to the charter and bylaws of the Henderson Mercantile Company as shown by the record, the only source from which Louis I. Dreeben as vice-president could derive the power, we find no authority

for the vice-president, as such, to perform the act upon which this action is based; on the contrary, the bylaws restrict the power of making such contracts to the president and secretary, with the use of the seal of the corporation. The right of the plaintiff below, in this case, then, must depend upon the question as to whether the mercantile company held Louis I. Dreeben out as its agent to make contracts like this, or represent it generally. We find in the record no evidence of any act done by the mercantile company itself, or any of its officers authorized so to do, which would indicate that it knew Louis I Dreeben was exercising the power of making notes for the company, or undertaking in any way to bind the company by contracts made by him. The only facts which tend to support such a conclusion are the acts and declarations of Dreeben himself, which, of course, can not constitute evidence against the principal unless brought to its notice and ratified by it. The paper which purported to be signed by L. Berwald, president of the mercantile company, was shown to have been executed by H. Berwald, and it does not appear that L. Berwald was present directing Harry Berwald to sign his name. It was not the act of the president of the mercantile company.

Over the objection of the mercantile company the court admitted four notes executed by Louis I. Dreeben in the same manner as that sued upon and payable to different persons. There was no evidence that the mercantile company authorized Dreeben to execute these notes, or, that knowing of the fact that he had done so, it had ratified and adopted his acts; therefore, the notes proved nothing against the mercantile company and were improperly admitted in evidence.

We conclude that there was not sufficient evidence before the court to support the finding of the District Court and Court of Civil Appeals that Louis I. Dreeben was authorized by the mercantile company to execute the note sued on in this case. The trial court therefore erred in entering judgment in favor of the bank against the Henderson Mercantile Company and in admitting the notes as above stated, for which errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*